IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| **LORENA RICO,**<br><br>**Plaintiff,**<br><br>v.<br><br>**JEREMY EVELAND; EVELAND & ASSOCIATES, PLLC; MICHAEL R. ANDERSON; and ASCENT LAW, LLC,**<br><br>**Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br><br>**Case No. 2:18-cv-00644-JCB**<br><br><br>**Magistrate Judge Jared C. Bennett** |

All parties in this case have consented to a United States Magistrate Judge conducting all proceedings, including entry of final judgment.[1] 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Before the court is Defendants Jeremy Eveland ("Mr. Eveland"); Eveland & Associates, PLLC ("Eveland & Associates"); Michael R. Anderson ("Mr. Anderson"); and Ascent Law, LLC's ("Ascent Law") (collectively, "Defendants") motion for summary judgment.[2] The court has carefully reviewed the written memoranda submitted by the parties. Under DUCivR 7-1(f), the court concludes that oral argument is not necessary and, therefore, decides the motion on the

---

[1] ECF No. 19.

[2] ECF No. 47.

written memoranda.³ Based upon the analysis set forth below, Defendants' motion for summary judgment is granted, and this action is dismissed.

## FACTUAL BACKGROUND

In 2005, Mr. Eveland formed Eveland & Associates.⁴ Prior to December 16, 2015, Eveland & Associates was engaged in the practice of law in the State of Utah.⁵

In 2014, Mr. Eveland (as a member of Eveland & Associates) performed legal services for Ms. Rico.⁶ After the completion of those legal services, a billing dispute arose between Ms. Rico and Eveland & Associates.⁷ That dispute eventually was brought to state court, and judgment was entered in favor of Eveland & Associates.⁸ Ascent Law and Mr. Anderson later garnished Ms. Rico's wages to satisfy the judgment.⁹ Those collection efforts are the factual basis for Ms. Rico's claims in this case.

Due to events unrelated to the work performed for Ms. Rico or the collection efforts for that work, Mr. Eveland was subject to disciplinary proceedings by the Utah State Bar.¹⁰ In

---

³ Plaintiff Lorena Rico ("Ms. Rico") filed a request for oral argument on Defendants' motion for summary judgment. ECF No. 62. The court will issue a separate Memorandum Decision and Order explaining the reasons for denying that request.

⁴ ECF No. 47-2 at ¶ 8.

⁵ *Id*. at ¶ 9.

⁶ *Id*. at ¶ 11.

⁷ *Id*. at ¶ 12.

⁸ ECF No. 31 at 13-14.

⁹ ECF No. 31 at 14-15.

¹⁰ ECF No. 47-2 at ¶ 14.

September 2015, Mr. Eveland learned from his attorney in the bar discipline matter that the Utah State Bar would be suspending his license to practice law.[11] Due to this suspension, Mr. Eveland determined that he would have to turn over his law practice to another lawyer.[12]

Because of his changed circumstances, Mr. Eveland sought a buyer for his law practice.[13] At that time, Mr. Anderson knew Mr. Eveland professionally and was working at Eveland & Associates as an associate lawyer.[14] Mr. Anderson approached Mr. Eveland about the possibility of buying the law practice of Eveland & Associates.[15]

On December 16, 2015, Mr. Anderson agreed to purchase Eveland & Associates and its corresponding assets from Mr. Eveland.[16] The debt Ms. Rico owed to Eveland & Associates was one of the many accounts receivable Mr. Anderson acquired when he purchased Eveland & Associates.[17] Mr. Anderson's purchase of Eveland & Associates was memorialized in a Purchase and Sale Agreement ("PSA"), the terms of which included, *inter alia*: (1) an introductory paragraph referring to Mr. Anderson as "the new owner of the law firm"; (2) representations that "Seller desires to sell the law firm" and that "Buyer desires to purchase the law firm"; (3) Section 1, which is entitled, "Sale and Purchase of law firm,"

---

[11] *Id.* at ¶¶ 15-16.

[12] *Id.* at ¶¶ 16-17

[13] *Id.* at ¶ 18.

[14] ECF No. 47-2 at ¶ 18; ECF No. 47-3 at ¶ 8.

[15] ECF No. 47-2 at ¶ 18; ECF No. 47-3 at ¶ 10.

[16] ECF No. 47-2 at ¶ 19; ECF No. 47-3 at ¶¶ 11, 15.

[17] ECF No. 47-3 at ¶ 52.

stating that "[t]he Buyer buys the entire law firm"; and (4) Section 1(b), which is entitled, "Continuity," providing that

> Buyer shall rebrand the company, but Seller shall continue to allow Buyer to use accounts in Seller[']s name until Buyer can move those accounts into the Ascent Law Firm name. Buyer will contact the clients of Seller and inform them of the company name change. Buyer and Seller will use best efforts together to ensure a smooth transition for any and all clients.[18]

Incorporated by reference into the PSA is a Payment Agreement, which provides a price for the transaction and terms of payment.[19] Since executing the PSA, Mr. Anderson has complied with the payment obligations set forth in the Payment Agreement.[20] Although Eveland & Associates still exists as an entity, it has not done any business since 2015, which is when Mr. Anderson purchased all of its assets and liabilities.[21]

After purchasing the law practice, Mr. Anderson created the legal entity Ascent Law on January 6, 2016.[22] Mr. Anderson was the sole member and manager of Ascent Law.[23] Mr. Anderson contributed the assets of Eveland & Associates to Ascent Law and then changed all existing advertising, letterhead, and any other intellectual property into the company name of

---

[18] ECF No. 47-2 at Attachment (PSA); ECF No. 47-3 at Attachment (PSA).

[19] ECF No. 59-1 at Attachment (Payment Agreement); ECF No. 59-2 at Attachment (Payment Agreement).

[20] ECF No. 59-1 at ¶ 9; ECF No. 59-2 at ¶¶ 8-9.

[21] ECF No. 47-2 at ¶ 21.

[22] ECF No. 47-2 at ¶ 22; ECF No. 47-3 at ¶¶ 12-13 & Attachment (Certificate of Organization of Ascent Law).

[23] ECF No. 47-2 at ¶ 22; ECF No. 47-3 at ¶¶ 12-13 & Attachment (Certificate of Organization of Ascent Law).

Ascent Law.[24]  Mr. Anderson took over all aspects of Eveland & Associates under the new name of Ascent Law, including dealing with existing clients, paying for previous liabilities, and managing the current assets.[25]  Mr. Anderson took over the building lease and continued to operate Ascent Law out of the same building.[26]  All staff who were a part of Eveland & Associates became Mr. Anderson's (and then, Ascent Law's) staff.[27]  Mr. Anderson (and then, Ascent Law) continued with the same receptionist, paralegals, bookkeepers, and tax professionals Eveland & Associates had used.[28]  Mr. Anderson continued with the same marketing plan, flyers, and email campaigns.[29]  Mr. Anderson continued to use the same QuickBooks, law firm software, websites, and email providers.[30]  Mr. Anderson continued to use the same phone numbers that Eveland & Associates had used.[31]

From December 2015 until July 1, 2020, Ascent Law set up 7,261 files for clients.[32] Of those files, Ascent Law set up only 63 debt collection cases, which accounted for less than

---

[24] ECF No. 47-2 at ¶ 23; ECF No. 47-3 at ¶ 12.

[25] ECF No. 47-2 at ¶ 24; ECF No. 47-3 at ¶ 14.

[26] ECF No. 47-2 at ¶ 25; ECF No. 47-3 at ¶ 16.

[27] ECF No. 47-2 at ¶ 26; ECF No. 47-3 at ¶ 17.

[28] ECF No. 47-2 at ¶ 26; ECF No. 47-3 at ¶ 17.

[29] ECF No. 47-2 at ¶ 27; ECF No. 47-3 at ¶ 18.

[30] ECF No. 47-2 at ¶ 28; ECF No. 47-3 at ¶ 19.

[31] ECF No. 47-2 at ¶ 29; ECF No. 47-3 at ¶ 20.

[32] ECF No. 47-3 at ¶ 24.

1% of its revenue.[33] Of those 63 debt collection cases, 38 of them were in collection of a consumer debt.[34] During that time period, 0.87% of Ascent Law's cases were debt collection cases, and 0.52% of its cases were consumer debt collection cases.[35]

The few consumer debt collection cases that Ascent Law has handled are part of its work as general counsel for a construction company.[36] Most of Mr. Anderson's work for that company is in contracts and general counsel services, but when a client does not turn over the funds that the insurance company pays them, Mr. Anderson may send a letter, or in rare cases, initiate a lawsuit.[37] Most of those lawsuits are against subcontractors that have not paid, not against consumers.[38]

Mr. Anderson has not employed any attorney who regularly operates in consumer debt collection.[39] There are no personnel at Ascent Law who are specifically assigned to work on debt collection activity, and the firm has no systems or contractors in place to facilitate such

---

[33] *Id*. at ¶ 25.

[34] *Id*. at ¶ 26.

[35] *Id*. at ¶ 27.

[36] *Id*. at ¶ 28.

[37] *Id*. at ¶ 29.

[38] *Id*. at ¶ 30.

[39] *Id*. at ¶ 34.

activity.[40] Ascent Law pays for no software utilized primarily for debt collection.[41] Ascent Law's website does not mention debt collection as one of the areas that it practices.[42]

In fact, Ascent Law does not have any clients who regularly engage in collections activities.[43] Mr. Anderson works primarily in real estate, divorce, criminal law, and estate planning.[44] Aside from Mr. Anderson, there are 7 other attorneys who have been at Ascent Law (and immediately prior to its organization), all of whom operate primarily in the same areas of practice as Mr. Anderson.[45] One other attorney at Ascent Law operates exclusively in bankruptcy law.[46]

## PROCEDURAL BACKGROUND

Ms. Rico filed her original complaint in this case on August 17, 2018.[47] On August 19, 2019, the court granted the parties' stipulated motion to allow Ms. Rico to amend her complaint.[48] Ms. Rico filed her amended complaint on August 20, 2020,[49] in which she

---

[40] *Id.* at ¶ 31.

[41] *Id.* at ¶ 32.

[42] ECF No. 47-2 at ¶ 32; ECF No. 47-3 at ¶ 47.

[43] ECF No. 47-3 at ¶ 38.

[44] *Id.* at ¶ 33.

[45] *Id.* at ¶ 35.

[46] *Id.* at ¶ 36.

[47] ECF No. 2.

[48] ECF No. 30.

[49] ECF No. 31.

alleges the following claims: (1) a claim for violations of the Fair Debt Collection Practices Act ("FDCPA") against only Ascent Law and Mr. Anderson; (2) a claim for declaratory relief under the Federal Declaratory Judgment Act and state law; and (3) state-law claims for conversion, communications fraud, civil conspiracy, injunctive relief, and violations of the Utah Consumer Sales Practices Act. The sole bases for this court's jurisdiction alleged in Ms. Rico's amended complaint are federal-question jurisdiction based upon Ms. Rico's FDCPA claim and supplemental jurisdiction over her remaining claims.[50]

Defendants filed their answer to Ms. Rico's amended complaint on September 6, 2019.[51] On July 21, 2020, Defendants filed the motion for summary judgment currently before the court.[52]

## LEGAL STANDARDS

Fed. R. Civ. P. 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In evaluating a motion for summary judgment, the court views the facts in a light most favorable to the nonmovant and draws all reasonable inferences in the nonmovant's favor. Jones v. Norton, 809 F.3d 564, 573 (10th Cir. 2015). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

---

[50] Id. at 3.

[51] ECF No. 33.

[52] ECF No. 47.

there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotations and citation omitted).

## ANALYSIS

Based upon the following analysis, the court concludes that (1) Ascent Law and Mr. Anderson are entitled to summary judgment on Ms. Rico's FDCPA claim against them, and based upon that conclusion, the court (2) declines to exercise supplemental jurisdiction over Ms. Rico's remaining claims and dismisses those claims without prejudice. Accordingly, Defendants' motion for summary judgment is granted, and this action is dismissed.

I. **Ascent Law and Mr. Anderson Are Entitled to Summary Judgment on Ms. Rico's FDCPA Claim Against Them.**

Ascent Law and Mr. Anderson are entitled to summary judgment on Ms. Rico's FDCPA claim against them because: (A) Ascent Law and Mr. Anderson were collecting their own debt, not a debt to a third party; (B) Ascent Law and Mr. Anderson never obtained Ms. Rico's debt under the meaning of the FDCPA; and (C) neither Ascent Law nor Mr. Anderson regularly engage in debt collection.[53] The court addresses each of those reasons below.

---

[53] Ascent Law and Mr. Anderson also argue that the FDCPA is inapplicable here under the FDCPA's exclusion from the definition of a debt collector "any person collecting or attempting to collect any debt owed or due . . . another to the extent such activity . . . concerns a debt which was originated by such person." 15 U.S.C. § 1692a(6)(F)(ii). The court declines to reach that argument here because Ascent Law and Mr. Anderson's other arguments provide more than adequate grounds to justify granting their motion for summary judgment on Ms. Rico's FDCPA claim against them.

9

### A. Ascent Law and Mr. Anderson Were Collecting Their Own Debt, Not a Debt to a Third Party.

Ascent Law and Mr. Anderson contend that the PSA and the Payment Agreement demonstrate that they purchased all assets of Eveland & Associates, including Ms. Rico's debt. Based upon that contention, Ascent Law and Mr. Anderson assert that they were collecting their own debt—not a debt owed to a third party—when they were collecting Ms. Rico's debt. Because the undisputed facts establish that assertion, the FDCPA is inapplicable, and Ascent Law and Mr. Anderson are entitled to summary judgment on Ms. Rico's FDCPA claim against them. 15 U.S.C. § 1692a(6) (defining the term "debt collector" under the FDCPA as "any person . . . who regularly collects or attempts to collect . . . debts owed or due . . . *another*" (emphasis added)); *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721-22 (2017) ("All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another.' And given that, it would seem a debt purchaser . . . may indeed collect debts for its own account without triggering the statutory definition in dispute . . . ."). Given *Henson*'s unmistakable holding, Ms. Rico does not challenge the validity of the assertion that the FDCPA requires a debt collector to act for "another."

Instead of challenging Ascent Law and Mr. Anderson's legal argument, Ms. Rico attempts to create a dispute of material fact by arguing that Ascent Law and Mr. Anderson have failed to provide any evidence to indicate that the PSA is a legally valid and enforceable contract. Specifically, Ms. Rico contends that the PSA fails to recite a price for the transaction or terms for payment and that Ascent Law and Mr. Anderson have failed to produce the Payment Agreement referenced in the PSA. Thus, Ms. Rico argues, the PSA is not a binding contract. Ms. Rico further argues that if the PSA is not an enforceable contract, Ascent Law and Mr. Anderson never

purchased Ms. Rico's debt, making Ascent Law and Mr. Anderson's reliance upon *Henson* misplaced.

In their reply, Ascent Law and Mr. Anderson admit that they failed to include the Payment Agreement as an attachment to the affidavits submitted in support of their motion for summary judgment. However, along with their reply, Ascent Law and Mr. Anderson have submitted additional affidavits that have the Payment Agreement attached.[54] The Payment Agreement identifies both a price for the transaction and terms of payment. With the submission of those affidavits and the Payment Agreement, Ascent Law and Mr. Anderson contend that Ms. Rico's argument must fail. The court agrees.[55]

The PSA, supplemented with the Payment Agreement, demonstrates an enforceable contract, thereby disposing of Ms. Rico's only argument against the application of the holding of *Henson*. Thus, Ascent Law and Mr. Anderson were collecting a debt for their own account and not for a third party, which makes the FDCPA inapplicable here. 15 U.S.C. § 1692a(6); *Henson,*

---

[54] ECF No. 59-1 at Attachment (Payment Agreement); ECF No. 59-2 at Attachment (Payment Agreement).

[55] Under DUCivR 56-1(d), a reply memorandum in support of a motion for summary judgment "may cite only additional evidence not previously cited in the opening memorandum to rebut a claim that a material fact is in dispute." Because Ms. Rico argued in her opposition memorandum that the absence of the Payment Agreement created a disputed issue of material fact, the court concludes that it was proper under DUCivR 56-1(d) for Ascent Law and Mr. Anderson to submit the additional affidavits as evidence with their reply memorandum. That is particularly true where, as here, the additional affidavits and the Payment Agreement are dispositive of Ms. Rico's argument that the PSA is not a valid and enforceable contract. Furthermore, even if Ascent Law and Mr. Anderson's submission of the additional affidavits with their reply memorandum was somehow improper, which it was not, Ms. Rico did not file a timely objection to those affidavits. Although Ms. Rico filed a motion for an extension of time to file an objection to those affidavits, ECF No. 63, that motion is denied for the reasons explained in a separate Memorandum Decision and Order.

137 S. Ct. at 1721-22; *see also Nielsen v. Dickerson*, 307 F.3d 623, 634 (7th Cir. 2002) ("Because the FDCPA defines a 'debt collector' as a person who endeavors to collect the debts owed to 'another,' 15 U.S.C. § 1692a(6), creditors who are attempting to collect their own debts generally are not considered debt collectors under the statute."). Therefore, Ascent Law and Mr. Anderson are entitled to summary judgment on Ms. Rico's FDCPA claim against them.

### B. Ascent Law and Mr. Anderson Never Obtained Ms. Rico's Debt Under the Meaning of the FDCPA.

Ascent Law and Mr. Anderson argue that because they never obtained Ms. Rico's debt under the meaning of the FDCPA, they are entitled to summary judgment on Ms. Rico's FDCPA claim. The court agrees.

The FDCPA excludes from the definition of a "debt collector" "any person collecting or attempting to collect any debt owed or due . . . another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). Because the FDCPA does not define the term "obtained," other courts have interpreted "obtained" to be synonymous with "assigned" and concluded that a defendant who acquires a debt by merger is not a "debt collector" under the meaning of the FDCPA. *See, e.g.*, *Brown v. Morris*, 243 F. App'x 31, 34-35 (5th Cir. 2007) (concluding that the mortgage company defendant did not obtain debt while the debt was in default because that defendant acquired the debt through a merger with the debtor's previous mortgage company and "was not specifically assigned [the] mortgage for debt-collection purposes"); *Hines v. Regions Bank*, No. 5:19-CV-1819-LCB, 2020 WL 4335830, at *2 (N.D. Ala. July 28, 2020) (citing *Brown* and stating that "courts have universally held that where a defendant acquires a debt through its merger with a previous creditor rather than via a specific assignment or transfer, the debt was not 'obtained'

12

while it was in default; therefore, the defendant is not a 'debt collector' under the FDCPA"); *Jackson v. Bank of Am., N.A.*, No. 15-00346-JJB-EWD, 2017 WL 1173933, at *3 (M.D. La. Mar. 28, 2017) (concluding that the defendant did "not qualify as a debt collector under the FDCPA" because it "acquired [the plaintiff]'s mortgage loan by merger, rather than transfer or assignment while in default"); *Fraga v. U.S. Bank Nat'l Ass'n*, No. A-12-CA-128-SS, 2012 WL 13032891, at *6 (W.D. Tex. Sept. 21, 2012) (concluding that the bank defendant was "not a debt collector under the FDCPA because [that defendant] became the servicer of [the plaintiff]'s loan via merger, not assignment"). This is true even when the merger occurs after the debtor's default. *See, e.g.*, *Fenello v. Bank of Am., N.A.*, 926 F. Supp. 2d 1342, 1350 (N.D. Ga. 2013) (concluding that when the defendant "BANA acquired 'all the property rights, powers, trusts duties, and obligations' of BACHLS, including the servicing of [the plaintiffs]' loan," BANA was not a debt collector under the meaning of the FDCPA, even though "the merger occurred after [the plaintiffs]' default" because "by operation of law, BANA now stands in the place of BACHLS as [the plaintiffs]' loan servicer"), *aff'd sub nom. Fenello v. Bank of Am., NA*, 577 F. App'x 899 (11th Cir. 2014); *see also Williamson v. Bank of Am., N.A.*, No. 1:14-CV-02824-AT-JFK, 2015 WL 11517083, at *11 (N.D. Ga. June 8, 2015) (citing *Fennello* to support the same conclusion), *report and recommendation adopted as modified*, No. 1:14-CV-2824-AT, 2015 WL 11605553 (N.D. Ga. July 13, 2015); *Neysmith v. McCalla Raymer, LLC*, No. 3:14-cv-00050-TCB-RGV, 2014 WL 12480028, at *3 n.4 (N.D. Ga. Sept. 18, 2014) (citing *Fenello* to support the same conclusion), *report and recommendation adopted*, No. 3:14-CV-50-TCB, 2014 WL 12498229 (N.D. Ga. Nov. 3, 2014).

Although not binding, the court finds the foregoing authorities persuasive and instructive here.  Ascent Law and Mr. Anderson did not obtain Ms. Rico's debt through an assignment for debt collection purposes; instead, they obtained that debt through the purchase of Eveland & Associates, which included Ms. Rico's debt.  Accordingly, the court concludes that Ascent Law and Mr. Anderson stand in the place of Eveland & Associates with respect to Ms. Rico's debt.  As such, Ascent Law and Mr. Anderson did not obtain Ms. Rico's debt under the meaning of the FDCPA and, therefore, they are not debt collectors thereunder.  The fact that the purchase occurred after Ms. Rico was already in default on the debt does not change that outcome.  For those reasons, Ascent Law and Mr. Anderson are entitled to summary judgment on Ms. Rico's FDCPA claim against them.

C.     **Neither Ascent Law nor Mr. Anderson Regularly Engage in Debt Collection.**

Ascent Law and Mr. Anderson contend that they do not regularly engage in debt collection, as that term is interpreted under the FDCPA, and, therefore, the FDCPA is inapplicable here.  The court agrees.

The FDCPA provides that a "debt collector" means any person whose "principal purpose . . . is the collection of any debts" or "who regularly collects or attempts to collect . . . debts owed or due . . . another."  15 U.S.C. § 1692a(6); *see also James v. Wadas*, 724 F.3d 1312, 1316 (10th Cir. 2013) ("The FDCPA establishes two alternative predicates for debt collector status: 1) engaging in debt collection as the principal purpose of the entity's business; or 2) engaging in debt collection regularly." (quotations and citation omitted)).  Thus, to determine whether Ascent Law and Mr. Anderson qualify as debt collectors under the FDCPA, the court must consider whether either of those meanings is satisfied under the facts of this case.

Ms. Rico does not contest Ascent Law and Mr. Anderson's argument that the collection of debts is not their principal purpose. Furthermore, it is clear from the background recited above, and for several of the reasons stated below, that debt collection is not the principal purpose of Ascent Law's or Mr. Anderson's law practices. Thus, the court turns to determining whether Ascent Law and/or Mr. Anderson regularly engage in debt collection under the meaning of the FDCPA.

In *James*, the Tenth Circuit set forth a list of factors for courts to consider when determining whether a party regularly engages in debt collection under the FDCPA. *James*, 724 F.3d at 1317-18. Those factors are:

> (1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernible, (3) whether the entity has personnel specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations.

*Id.* (quotations and citation omitted). The *James* court also indicated that courts should consider: (6) "[f]acts relating to the role debt collection work plays in the practice as a whole . . . to the extent they bear on the question of regularity of debt collection activity"; and (7) "[w]hether the law practice seeks debt collection business by marketing itself as having debt collection expertise." *Id.* at 1318. Based upon the court's consideration of those factors below, the court concludes that Ascent Law and Mr. Anderson do not regularly engage in debt collection and, therefore, are not debt collectors under the meaning of the FDCPA. Accordingly, the court

concludes that the FDCPA is inapplicable here and that Ascent Law and Mr. Anderson are entitled to summary judgment on Ms. Rico's FDCPA claim against them.

First, the court considers the number of debt collection communications issued and/or collection-related litigation matters pursued by Ascent Law and Mr. Anderson. From December 2015 until July 1, 2020, Ascent Law set up 7,261 files for clients.[56] Of those files, Ascent law set up only 63 debt collection cases, which accounted for less than 1% of its revenue.[57] Of those 63 debt collection cases, 38 of them were in collection of a consumer debt.[58] Thus, for the relevant time period, 0.87% of Ascent Law's cases were debt collection cases, and 0.52% of its cases were consumer debt collection cases.[59] Under those facts, the court concludes that this factor weighs against a determination that Ascent Law and Mr. Anderson regularly engage in debt collection. *See, e.g.*, *Young v. Kelly & Bramwell, P.C.*, No. 1:17-CV-144 TS, 2019 WL 2515782, at *2 (D. Utah June 18, 2019) (concluding that the defendants did not regularly engage in debt collection when they had total of 5 debt collection cases during a 5-year period, which represented 0.56% of the total number of cases the defendants handled and 0.22% of the defendants' total gross revenue during that time period).[60]

---

[56] ECF No. 47-3 at ¶ 24.

[57] *Id*. at ¶ 25.

[58] *Id*. at ¶ 26.

[59] *Id*. at ¶ 27.

[60] Before turning to the remaining factors, the court notes that, importantly, Ms. Rico has neither disputed the evidence proffered by Ascent Law and Mr. Anderson on those factors nor presented any arguments indicating that those factors are not satisfied. Nevertheless, the court turns to considering those factors.

Second, the court considers the frequency of Ascent Law's and Mr. Anderson's collection-related communications and/or litigation activity, including whether any patterns of such activity are discernible. According to undisputed portions of Mr. Anderson's affidavit submitted with Defendants' motion for summary judgment, Ascent Law's and Mr. Anderson's debt collection activity has been infrequent and has not been conducted in any specific pattern.[61] Accordingly, the court concludes that this factor weighs against a determination that Ascent Law and Mr. Anderson regularly engage in debt collection.

Third, the court considers whether Ascent Law and Mr. Anderson have personnel specifically assigned to work on debt collection activity. Undisputed portions of Mr. Anderson's affidavit indicate that they have no such personnel.[62] As such, the court concludes that this factor weighs against a determination that Ascent Law and Mr. Anderson regularly engage in debt collection.

Fourth, the court considers whether Ascent Law or Mr. Anderson have systems or contractors in place to facilitate debt collection activity. Undisputed portions of Mr. Anderson's affidavit indicate that they do not.[63] Accordingly, the court concludes that this factor weighs against a determination that Ascent Law and Mr. Anderson regularly engage in debt collection.

Fifth, the court considers whether Ascent Law and Mr. Anderson have engaged in debt collection activity in connection with ongoing client relationships with entities that have retained

---

[61] ECF No. 47-3 at ¶¶ 23, 34, 37-38.

[62] *Id.* at ¶ 31.

[63] *Id.* at ¶¶ 31-32.

the lawyer or firm to assist in the collection of outstanding consumer debt obligations. According to undisputed portions of Mr. Anderson's affidavit, Ascent Law and Mr. Anderson do not engage in any such collection activity.[64] Therefore, the court concludes that this factor weighs against a determination that Ascent Law and Mr. Anderson regularly engage in debt collection.

Sixth, the court considers the role debt collection plays in Ascent Law's and Mr. Anderson's practices to the extent that role bears on the question of regularity of debt collection activity. Undisputed portions of Mr. Anderson's affidavit indicate that debt collection is neither a primary nor even a regular area of practice either for himself or for Ascent Law's attorneys.[65] As such, the court concludes that this factor weighs against a determination that Ascent Law and Mr. Anderson regularly engage in debt collection.

Finally, the court considers whether Ascent Law and/or Mr. Anderson seek debt collection business through marketing indicating that they have debt collection expertise. Undisputed portions of Mr. Anderson's affidavit indicate that they do not.[66] Thus, the court concludes that this factor weighs against a determination that Ascent Law and Mr. Anderson regularly engage in debt collection.

For the foregoing reasons, the court concludes that Ascent Law and Mr. Anderson do not regularly engage in debt collection under the definition of the FDCPA and, therefore, they do not

---

[64] *Id.* at ¶¶ 28-30, 38, 49.

[65] *Id.* at ¶¶ 33-37.

[66] *Id.* at ¶¶ 46-49.

qualify as debt collectors under the FDCPA. Accordingly, the FDCPA is inapplicable here and Ascent Law and Mr. Anderson are entitled to summary judgment on Ms. Rico's FDCPA claim against them.

## II. The Court Declines to Exercise Supplemental Jurisdiction Over Ms. Rico's Remaining Claims and Dismisses Those Claims Without Prejudice.

Having concluded that Ms. Rico's sole federal claim under the FDCPA must be dismissed, the court declines to exercise supplemental jurisdiction over her remaining claims.[67] "Pursuant to 28 U.S.C. § 1367(a), federal courts may exercise supplemental jurisdiction over claims outside their original jurisdiction if those claims are part of the same Article III case or controversy as claims over which the court has original jurisdiction." *Brock v. Herbert*, No. 2:09-CV-1118, 2012 WL 1029355, at *2 (D. Utah Mar. 26, 2012). However, "[u]nder 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if the district court has dismissed all claims over which it has original jurisdiction. When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011)

---

[67] All of Ms. Rico's remaining claims, except one, are based upon state law. That exception is her claim for declaratory relief under the Federal Declaratory Judgment Act. However, the court need not entertain that claim because the court has concluded that her sole federal claim, and the basis for this court's jurisdiction, fails. Ms. Rico cannot base federal jurisdiction on her claim under the Federal Declaratory Judgment Act because it merely provides a remedy for other valid federal claims; it does not create federal jurisdiction for state claims. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) ("[T]he operation of the Declaratory Judgment Act is procedural only. Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." (quotations and citation omitted)); *Growgenix Sols. LLC v. Roberts Int'l Agric. Dev., LLC*, 428 F. Supp. 3d 1236, 1241 (D. Utah 2019) ("[T]he Declaratory Judgment Act is not an independent source of jurisdiction."). Therefore, the court dismisses that claim without prejudice along with Ms. Rico's state law claims.

(quotations and citations omitted). Based upon those authorities, Ms. Rico's remaining state-law claims are dismissed without prejudice. *Bauchman ex rel. Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997) ("If federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.'" (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988))).

## CONCLUSION AND ORDER

Based upon the foregoing, IT IS HEREBY ORDERED:

1. Defendants' motion for summary judgment[68] is GRANTED.

2. Ms. Rico's FDCPA claim against Ascent Law and Mr. Anderson is DISMISSED WITH PREJUDICE.

3. Ms. Rico's remaining claims are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED December 17, 2020.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[68] ECF No. 47.